May it please the court. Mr. Iribe's extradition in this case was handled not just unfairly or wrongly, but it was completely, forgive the phrase, bungled. What happened was Mr. Iribe was in Mexico in custody. He was extradited under the specific guidelines of a diplomatic note from the Republic of Mexico for only the offense and expressly stated only the offense of conspiracy to name. Subsequently, the United States sought to seek and did seek and impose upon him various other charges. They did this without contacting the government of Mexico. They did this without a waiver of the rule of specialty. And they did this only based upon an improperly foundationally entered document from Linda Jacobson, a member of the United States government saying, yes, this unsealed, unsigned document from Mexico with some initials at the bottom when the charges have changed is not enough to keep someone, a foreign national, in this country and to continue to be prosecuted. The second claim that we're making today, as the court knows, is one that seems on its face a little bit silly, and I'll grant that, that, you know, it could be looked at that defense counsel is saying that the government cannot proceed on conspiracy and attempt charges at the same time. Of course, they're both theories of liability, both of which the government can proceed on. However, the miscommunication, the mistyping, whatever it was in Mr. Uribe's conditional plea agreement had as an overact of the conspiracy, the fact that the kidnapping, maiming, murder, and other various and unsundry things were actually completed. So an overact is admitted. So what? I don't understand what that even has to do with it. To prove the conspiracy, the crime is in the agreement, and to prove an attempt or more, there has to be an act towards the commission. There are two different theories. Correct. They can live side by side and a person can be convicted of both because they don't have entirely common elements. That's entirely true, Your Honor. Okay. However, in this case, the penalty for the conspiracy was 5 years. The penalty, as outlined by Congress, for the attempt at kidnapping was 20 years. They stacked together for a total of 25 years, which Mr. Uribe is now serving. Now, if he were just to be convicted on the overt act, which was put in the conspiracy charge, then he would be facing a 5-year sentence and not a 25-year sentence. The problem being that the government seems to take the seemingly logically challenging position that one can be convicted and have admitted to completed an act in one count and still get extra time on another count because that act was only attempted. Well, it's like any other plea agreement situation where you do a lot worse things than you end up pleading to. And here, it's in part because of the requirements of the Mexican Extradition Treaty that he didn't get charged with and sentenced for all the things he actually did. But it seems to me that it ends up being ultimately to his benefit and not to his detriment. No doubt there was a very beneficial plea agreement entered for Mr. Uribe, and he could have been charged with very much more substantial crimes. And no doubt Mr. Forge could have probably won that trial or gotten him to plead at some point. I wasn't trial counsel, but got him to plead at some point to a higher penalty. The point, however, is that in dealing with legal documents, I think we need to be exact and to say both are incohate crimes. And Mr. Forge is absolutely right in his pleading papers to say that, but to say in one count, to add, as an overt act of the conspiracy, it was actually done, and then the higher charge for attempt, it just begs logic. Our primary concern is with Mr. Uribe's extradition. If the Court has any questions on that, I'll happily entertain them, or I will continue with some of the specifics of my argument. Go ahead. Okay. Thank you, Your Honor. Extradition, in this case, Your Honor, and allow me to refer to the rule for entering into evidence documents, if you look to Federal Rule of Evidence 902, sub 3 for foreign documents, A and B, something has to be done by a foreign official. It can't just be a United States official saying that this is an official transmission of the Republic of Mexico. That's what the government tried to do in this case by continuing to recognize the diplomatic note with Linda Jacobson's letter as cited in counsel's papers. On page 6 of the government's brief, they said that the extradition was granted, and it was, in a sense, okay. However, the same facts were not the same charges. And prior to the extradition of Mr. Uribe, there was great debate between the two nations as to what was going on and what the charges would be and which charges could be sustained. So even though they were the same facts, there was debate from the onset as to what the right of the Republic of Mexico would agree to an extradition upon. That changed once Mr. Uribe got to the United States without so much as a phone call or an advisement or some sort of a more formal letter. All we have is what's called in the letter a non-objection to the rule of specialty. And I would ask the Court to recognize that a non-objection is the same as me sitting at a trial table and not standing up to object to hearsay. A waiver of something is very different. It's to give something up. Under treaty terms, it's giving a very specific thing up, and that's what differentiates it from a non-objection in this case. So there are three main problems with the extradition. The first is that it was based upon a document which did not have the proper foundation, did not have the proper source, did not have the seal, a signature, and was only allegedly authenticated by a U.S. official who we claim cannot authenticate that document. Second, there is a difference between a waiver and a non-objection. So is it your position that even if the note is properly authenticated, there's a problem? Or only if the Ms. Jacobson's materials are insufficient? If the note is sufficient, then there is still a problem because of the difference between a non-objection and a waiver. You're saying that it's not enough for it to say the Foreign Ministry does not object to reclassification of the crime, et cetera? Correct. That's not enough? Correct, Your Honor. The treaties between the nations are to be stricter than treaties. To follow through with your example, though, if the question is asked at trial and the district judge says to you, do you have any objection, and you said, no, I have no objection, that we wouldn't consider that to be a waiver of your opportunity to object, that that wouldn't be a waiver? Well, I could say I, with exception, depending on the jury trial and the issue. I'm trying to get you to focus on the exact wording that occurred here. We have no objection is what they say. Right. Is that another way to say we agree or it's fine with us? I don't think so, Your Honor. And like I said, to waive something, we commonly have this in the Southern District of California, and the judges advise defendants of it all the time. To waive something is to give it up, not to just say, to take, for instance, a Millicent Hender plea of I don't object, I'm taking no position on this. It's different to actually waive a right than to just not object to what has, in fact, already happened. And then, again, as the case progressed over many, many years, the Mexican government was never apprised of what happened to Mr. Uribe. Now, with the remaining few seconds I have, I'm not here to tell the Court that Mr. Uribe is an outstanding citizen, that he should be given some sort of leniency. I'm only here to ask the Court that, particularly with the influx of violence from Mexico, that extraditions be handled properly and the plea agreements, the legal documents, be handled exactly. Thank you. Good afternoon, Your Honors. My name is Jason Forge. I'm here on behalf of the United States. Your Honors, I hope it is apparent from the record that we did not do an end run around the treaty or around Mexico's sovereignty in this instance. We had consulted officials from Mexico at each step of the way. We made clear exactly what it is we wanted to do and exactly what it is that we had done. The second superseding indictment was presented to the appropriate Mexican officials. They clearly demonstrated in the diplomatic note that they read and understood that document. They stated unequivocally that they had no objection to what we were doing, and I think Judge Graber's analogy is perfectly apt. There's a big difference between someone merely not standing up in court versus someone being asked specifically, this is what the government's doing here. Do you object? And the person responding, I have no objection. In this instance, we have a sovereign nation saying, we have no objection. And so that's what distinguishes this case from a case with which I'm sure Judge Ferguson is very familiar, the US v. Conn decision, which he wrote some time ago. There is where this court held that silence alone will not be deemed to be consent or acquiescence. Now, in that particular case, the count was being challenged on appeal was a crime that was not even recognized in the X rating country, which was Pakistan. And so as this court held, there's every reason to believe in this instance that the silence does not indicate assent, but rather had this question been posed to them squarely, they would have objected. Here, there's no need to speculate, and there's no need for us to guess. The question was posed to the country of Mexico, and they specifically said, we have no objection. And the case law is clear, from Johnson v. Brown, which is over a century old, to US v. Majan, both of which were said in our papers. We do not in this country question the judgment of the X rating country. We do not question their assessment about whether a crime fits within an extradition treaty. We do not question their judgment about whether or not a superseding indictment fits within the treaty or is acceptable to them. It is their decision to make. Quite frankly, I wish we did question what other countries did, because I would probably be here on the other side of the courtroom asking this court to approve murder charges against Mr. Rive, which would challenge the decisions of the country of Mexico. Well, let me just ask, at any time was Mr. Rive subject to a sentence of life imprisonment? No, Your Honor, no. And that, I think, is the only fair reading of what the final extradition documents show in Mexico. That is what they were guarding against. His extradition was precluded, as the other charges, the conspiracy to maim, I'm sorry, the conspiracy to kidnap and murder under 956, insofar as the potential sentence is a life imprisonment. And that was never, that risk was never posed to him by virtue of this second superseding indictment. In fact... As I understand it, in the second superseding indictment, his potential sentence went down by about 10 years. That is exactly correct, Your Honor. And that is another way in which he benefited from the treaty. And to bring home the point even more starkly, his co-defendant in this case, Ms. Bailey, who hired him to do the kidnapping and the killing, which he did, she received a sentence of life imprisonment plus five years. She's a U.S. citizen? Exactly, Your Honor. So this is actually, I know there are a lot of cases that come before the court where non-U.S. citizens seem to be treated maybe more harshly than U.S. citizens, but this is one instance in which there is a reversal of those rules, and a very stark reversal of those rules. We have a U.S. citizen who received a significantly longer sentence than Mr. Ebate could have received, let alone did receive. And regarding the authenticity of the diplomatic note, Your Honors, we did not proceed under the self-authenticating provisions of Rule 902. We proceeded under Rule 901, which provides a non-exhaustive list of means of establishing the authenticity of the document. And Ms. Jacobson's declaration more than adequately established her knowledge and familiarity with these diplomatic notes. She specifically said, we, basically at the State Department, received this. It was transmitted to us from Mexico's Secretary of Foreign Affairs, which is effectively their State Department. It's a communication between sovereign nations. It is a legally operative document. It is a document that she attested to is precisely the type of communication that the two countries use in order to indicate their assessment of these types of issues. It is all that is available to us, and it's all that is ever used. So it's not a 902 analysis, it's a 901 analysis. And I think under either provision, either because of her personal knowledge or the fact that this becomes a public record of the United States once we receive it. Because it is of the type of record that is kept and under either provision, it is authentic. And it certainly was not clearly erroneous or abuse of discretion for Judge Miller to accept that document. So I don't think that that challenge is apt here. The honors, this is a very serious crime. This was a very difficult decision on our part to seek authorization to charge offenses for which there was a ten year shorter sentence to which Mr. Riva would be subject. We made that decision based on what we felt was the most responsible way to handle this case. But there was no abuse of the treaty here. There was ample consultation with Mexico. And I think when you compare this to any of the other cases that have been cited in both briefs, the extraditing country was given more than ample opportunity to weigh in on this issue. And they clearly expressed their feeling that there was no objection to what we were doing. I'm happy to answer any questions that your honors have. But I feel that the matter has been adequately covered by the briefs. Thank you very much. I see that I have about three or four seconds left. I think I won't take any more than that of your time if the court will permit me. By his own admissions in his plea agreement, which we question the technicalities of, Mr. Uribe committed a crime. The problem is he should be in prison in Mexico for that crime, not extradited to the United States for that crime. Based on a series of failed, poor, or totally non-existent communications. Thank you. Thank you. All right, we'll take up the final matter that's set for argument today.
judges: Pregerson, Graber, Wardlaw